HAT-SWEAT MANUF'G Co. *v.* PORTER *et al.* SAME *v.* AUSTIN *et al.* SAME *v.* McGALL *et al.* SAME *v.* BERG *et al.* SAME *v.* McCHESNEY *et al.* SAME *v.* ELLOR *et al.*

(*Circuit Court, D. New Jersey.* June 20, 1891.)

1. SUIT FOR ACCOUNTING—JURISDICTIONAL AMOUNT.
    In a suit against manufacturers to recover royalties for use of a patent, and for an accounting, an objection on demurrer that the amount involved is insufficient to give the circuit court jurisdiction is without merit if the bill on its face shows that the amount is sufficient. Until a decree for an accounting is made, proof of the amount recoverable would be premature.
2. PATENTS FOR INVENTION—LICENSE—FRAUDULENT REPRESENTATIONS.
    The owner of a patent on hat-sweats, having sued for infringement, to compromise, granted defendants a license to use the patent in their manufactures, in consideration of a certain royalty, and agreed to give them a rebate of 50 per cent., and not to grant a license to any other manufacturer except for the same royalty, without rebate. The terms of the licenses were kept secret from other manufacturers, and the owner of the patent issued to them a circular stating that the licenses had been granted to the other manufacturers for the specified royalty, but saying nothing as to the rebate, and through his agents the other manufacturers were induced to accept licenses under the terms specified in the circular. *Held,* that the owner's fraudulent representations preclude his recovery of the royalties.

In Equity.
*John R. Bennett,* for complainants.
*Wetmore & Jenner,* for defendants.

Before ACHESON and GREEN, JJ.

ACHESON, J. These six cases were argued together, and, as they are substantially alike in their facts, this opinion will apply to them all. Upon the question of jurisdiction little need be said. The want of jurisdiction was set up *in limine,* and the question was considered and passed on by the judge then holding this court, whose carefully prepared opinion is to be found in 34 Fed. Rep. 745. His decision sustaining the jurisdiction of the court we accept as correct, and conclusive of the question. It is, indeed, now further urged that the court is without jurisdiction because of the insufficiency of the amounts involved. But on the face of each of the bills the amount in controversy is over the jurisdictional sum. True it is that the fact has not yet been established by proof. But, no decree for an account having yet been made, proof of the amounts recoverable by the plaintiff under the allegations of the bills would have been premature. We are therefore of the opinion that at the present stage of the cases this objection is not well taken.

We pass then to a consideration of the merits of the controversies. The foundation of each of these suits is an agreement of license issued by the plaintiff to the defendants, respectively, purporting, upon certain conditions, to license them to make hat-sweats under certain recited letters patent, at specified rates of royalty. The licenses were issued in the year 1884, and they are alike in their terms. The defendants made returns and paid royalties up to different dates in the latter part of the year 1886 and early part of 1887, when they refused to pay further royalties, on the ground that they were induced by the plaintiff to execute the licenses by means of fraudulent representations made by the plaintiff's agents. The defense in each case, in brief, is that the agreement sued on is based on a fraud practiced by the plaintiff upon the defendants, whereby they were induced to accept the license, and that upon discovering the imposition they rescinded the contract. In disposing of the cases we will not undertake to recite or discuss at any length the voluminous proofs. They have received our most careful consideration, and all that it is needful for us to do is to state our conclusions of fact and law. It is shown that prior to December 1, 1883, the corporation plaintiff had brought several suits for the violation of its patents, which were defended by an unincorporated association of hat manufacturers, composed of 21 companies and individuals, who were extensive and leading hat manufacturers, styling themselves "The Associated Hat Manufacturers." Negotiations for the settlement of the litigation ended in a secret agreement in writing, dated December 1, 1883, between the plaintiff and the members of this association, whereby it was agreed that the plaintiff should grant to them, respectively, licenses under its patents at certain rates of royalty, but that each of the members of the association so licensed should receive back from the plaintiff a rebate of 50 per centum of the royalties paid by them, respectively, and the plaintiff thereby agreed not to grant licenses for any lower rates of royalty than those stated, and that it would exact from all other licensees the full rates

of royalty, without any rebate. Upon the execution of this agreement, the members of the association took licenses in ordinary form, and thereafter made their returns and received back their rebates. During much of the time these rebates were paid back in a roundabout way, and under the fictitious name of "earnings," to obscure the true nature of the transaction. Soon after the signing of the agreement, the plaintiff sent out to the trade a circular dated December 1, 1883, wherein it was announced:

"The Associated Hat Manufacturers, comprising most of the leading fur and wool hat manufacturers in the country, who undertook the defense of the suits brought by the company under its patents against various infringers in New York city and elsewhere, have, after a very thorough investigation, by the advice of their counsel, acquiesced in the rights of the company, and have admitted the validity and sufficiency of its patents, and have agreed to take licenses to manufacture for their own use under the same, at the schedule of royalties hereto annexed. The company is now prepared to extend the privileges to any and all hat manufacturers, and to grant licenses to them to manufacture for their own exclusive use, upon their effecting satisfactory settlement for previous user."

Here followed a "schedule of royalties required to be paid [the circular declared] by all licensees of the company." It is shown that the several defendants, all of whom had previously been making the hat-sweats, were induced to execute and accept the licenses in suit, at the rates of royalty specified in the circular, by reason of representations made to them by the plaintiff's agents, authorized to negotiate the licenses, that all the plaintiff's licensees were on the same footing, and paid the same royalties. We think the representations so made were quite material, for they were to the effect, if not in terms, indeed, that the leading hat manufacturers in the whole country were on an equality in respect to royalties, which in the sharp competition of trade was highly important to the defendants if they took licenses. We are satisfied that the respective defendants believed the representations so made to be true, and acted on the faith thereof in taking licenses. That the representations were false is certain, and we think the plaintiff's agents knew them to be untrue. But whether or not they had knowledge, the plaintiff is responsible for their statements, especially in view of the false and misleading circular it had issued to the trade.

Under the circumstances disclosed by the proofs, we are of the opinion that the several defendants acted with sufficient promptitude in repudiating the license after discovering the fraud. In some instances the information which first reached them was under the seal of confidence, and they were not at liberty to act upon it. Moreover, it was no easy thing to get at the truth, as the agreement between the plaintiff and the members of "The Associated Hat Manufacturers" was kept a close secret. Indeed, that there was a written agreement first became certainly known to the defendants during the progress of these cases, and its production before the examiner was accomplished with great difficulty, and eventually was effected only under the pressure of an order of court.

Such being the material facts of the case, we have no difficulty as to the law. The plaintiff is in a court of equity. The substantial relief sought is the specific enforcement of these contracts of license. But no such relief is obtainable where the contract has had its inception in the plaintiff's fraud, and was obtained from the defendants by misrepresentation and deceit. Upon the proofs, the plaintiff is in no position to successfully invoke the intervention of a court of equity for relief of any nature. We may add that our conclusion is in accord with that of Judge LACOMBE in the case of *Hat-Sweat Manuf'g Co.* v. *Waring*, 46 Fed. Rep. 87, 106, where the facts were essentially the same as they are here.

There must be a decree, in each of the cases, dismissing the bill, with costs.

GREEN, J., concurred on all points.